FILED
2005 Jan-03 PM 03:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE EULER CLINIC, INC., <br> d/b/a ALABAMA PODIATRY CARE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> L.M. BERRY AND COMPANY, INC., and <br> BELLSOUTH ADVERTISING & <br> PUBLISHING CORPORATION, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CV 04-P-03256-S <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION**

This case is before the court on Defendants L. M. Berry and Company, Inc. ("Berry") and BellSouth Advertising and Publishing Corporation ("BAPCO")'s Motion to Transfer (Doc. # 2) and Plaintiff Euler Clinic, Inc. ("Euler")'s Motion to Remand (Doc. # 5). The motions have been fully briefed, and the court heard oral argument from the parties on December 20, 2004. For the reasons outlined below, the court finds that Plaintiff's motion to remand is due to be denied while Defendants' motion to transfer is due to be granted.

**I.    Motion to Remand**

Plaintiff's motion to remand asserts that Defendants' removal of this case was untimely because it was outside of the thirty-day requirement of 28 U.S.C. § 1446(b). (Doc. # 5). Plaintiff filed a complaint against Defendants on February 24, 2004 in the Circuit Court for Jefferson County, Alabama and served Defendants on March 3, 2004. (Doc. # 5, at 8).[1]  The complaint did

---

[1] Plaintiff's complaint alleges breach of a contract, negligence, willfulness, wanton conduct, fraud, and intentional interference with business relations. The allegations arise out of a contract between Plaintiff and Defendants for the publication of advertisements in the Birmingham, Alabama edition of *The Real Yellow Pages*® directory. (Complaint, at ¶ 22-25).

not specify an amount of damages, leaving that determination to the trier of fact.  (Doc. # 5, at 6).[2]  This case was removed on November 19, 2004.  (Doc. #1).

Defendants maintain that "there was nothing on the face of the complaint which could have led the[m] to conclude that the $75,000.00 jurisdictional threshold for removal on diversity of citizenship grounds existed."  (Doc. # 9). Defendants point instead to their removal of this action within thirty days after the receipt of evidence from which it first could be ascertained that the case was removable: (1) a November 16, 2004 e-mail from Euler's counsel setting forth damages sought, and (2) a November 17, 2004 service copy of Euler's motion for summary judgment filed in the state court which asserts that Euler is due to recover damages in the amount of $16,664.63 for incorrectly billed charges, plus "lost gross revenue in excess of $623,000.00." (Notice of Removal, at ¶ 10, 11;  Motion for Summary Judgment at ¶ 12).  Plaintiff counters with the argument that Defendants "could easily have determined from the face of the complaint filed on February 24, 2004, that, if their refusal to allow Euler to advertise caused them to be liable, the damages would far exceed the $75,000 jurisdictional amount."  (Doc. # 5, at 7).

The amount in controversy is measured at the time of removal.  *St. Paul Mercury Indemn. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).  If a case is initially removable based on the allegations in the complaint, the defendant must file within thirty days after service of process a "Notice of Removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds."  28 U.S.C. § 1446(a).  However,

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become

---

[2] The complaint has not been amended.

removable . . .

28 U.S.C. § 1446(b).[3]

In this case, the court must determine whether Plaintiff's complaint provided sufficient indicia of the amount in controversy such that the case was removable from the date of service of process. As noted earlier, the complaint did not specifiy an amount of damages and left the determination of damages to the trier of fact. (Doc. # 5, at 6). Defendants, relying on the Fifth Circuit's decision in *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992), argue that they did not have a duty "to exercise due diligence in determining the amount in controversy when the initial pleading d[id] not reveal such an amount." 969 F.2d at 162-63.

In *Chapman*, the court held that the thirty-day time period under § 1446(b) does not begin to run unless the initial pleading "affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Chapman*, 969 F.2d at 163. The rationale for this conclusion is practical: A contrary rule "would needlessly inject uncertainty into a court's inquiry as to whether a defendant has timely removed a case, and as a result would require courts to expend needlessly their resources trying to determine what the defendant knew at the time it received the initial pleading and what the defendant would have known had it exercised due diligence." *Chapman*, 969 F.2d at 163. Defendants point out that, although several federal district courts have favorably cited the *Chapman* rule, *see, e.g., Mendez v. Central Garden & Pet Co.*, 307 F.Supp.2d 1215, 1221 (M.D. Ala. 2003); *Viacom, Inc. v. Zebe*, 882 F. Supp. 1063, 1064, (S. D. Fla. 1995); *Smith v. Bally's*

---

[3] A case is not removable on diversity of citizenship grounds for any reason when one year has passed "after commencement of the action." *Id.* This case, although removed on the basis of diversity, was removed within eight months of commencement of the action.

*Holiday*, 843 F.Supp. 1451, 1456 n. 7 (N.D. Ga. 1994), the Eleventh Circuit has not yet weighed in on *Chapman*.

Euler relies on *Frisard v. Bellsouth Telecommunications, Inc.*, 898 F.Supp. 369 (E.D. La. 1995) and *Harrell v. Reynolds Metal Company*, 599 F. Supp. 966 (N.D. Al. 1985) for the argument that "the defendant is not bound to wait until the plaintiff specifies damages but should make its own judgment from the complaint whether the damages could exceed the jurisdictional minimum." (Doc. # 5, at 8). Euler's reliance is misplaced. The court is not bound by either case and in any event, finds them distinguishable from the case at hand.[4]

Moreover, Euler's argument that removability was obvious from the face of the complaint is actually based on evidence *outside of the complaint*. Euler argues that Defendants should have recognized that Euler suffered a significant loss of revenue – $264,000.00 per year – as a result of the alleged acts of Defendants. Euler relies in part on a letter they received from Defendants which suggested that "[e]very dollar invested in a display ad can generate $14.00 in sales" and "$1 invested with RealPages.com can generate $11 in sales." (Affidavit of Donald W. Hayes, Jr., Ex. 7). Defendants point out that these statements are not predictions of revenue,

---

[4] In *Harrell*, unlike in this case, the question before the court was whether the defendants should have been able to determine that individual defendants had been fraudulently joined to destroy diversity jurisdiction when facts that were obtained in a discovery deposition "apparently were known to defendants long before [the date of that deposition]." *Harrell,* 599 F. Supp. at 968. In *Frisard*, the Eastern District of Louisiana found that "[a]t the time of removal, it was facially apparent from plaintiff's petition that damages could exceed $50,000." *Frisard*, 898 F. Supp at 370. However, the court came to that conclusion because, under Louisiana law, a jury trial is not available when the amount in controversy is less than $50,000. La.Code Civ.P. art. 1732 (1960). Because $50,000 at that time also was the required amount in controversy to show diversity jurisdiction existed, the court recognized that "a lawsuit filed in state court that includes a jury demand reveals on its face that the action meets the federal jurisdictional amount." *Frisard*, 898 F. Supp at 370. By contrast, this lawsuit was filed in an Alabama circuit court, of which the jurisdiction is exclusive for matters presenting claims exceeding the sum of $10,000 – not the $75,000 minimum requirement for federal diversity cases. *See* Ala. Code Sec. 12-11-30.

given that the letter advises that "YOUR RESULTS MAY VARY BASED ON YOUR OWN BUSINESS AND THESE RESULTS ARE NOT GUARANTEED." (Affidavit of Donald W. Hayes, Jr., Ex. 7).  Moreover, Euler admits that "when [it] filed the complaint, it did not know with specificity the damages it had or would suffer as a consequence of the defendants' continuing conduct." (Doc. # 5, at 10).

Having considered the arguments presented by both parties,[5] this court agrees with the *Chapman* rule and finds that because Plaintiff's complaint did not specify the amount of damages sought, the thirty-day period of § 1446(b) did not begin to run until service "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is removable." 28 U.S.C. § 1446(b).  The court finds the *Chapman* rule to be consistent with the standard governing whether a case has been properly removed.

Under the law of the Eleventh Circuit, when a complaint contains an unspecified claim for damages, a removing defendant must show by a "preponderance of the evidence" that the required amount in controversy exists. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)).

---

[5] One of Defendants' arguments in opposition to remand is that a June 7, 2004 letter from Euler's counsel to Defendants' counsel assessed Euler's claims at far less than $75,000, demonstrating that Defendants had no reason to assume that Euler intended to claim damages at a sum over $75,000.  (Doc. # 9, Ex. 2 thereto).  Plaintiff's reply in support of its motion to remand requests that this evidence be stricken as an inadmissible settlement negotiation pursuant to Fed. R. Civ. 408.  The court need not decide whether this evidence is admissible, however, because it finds that even without consideration of the June 7, 2004 letter, the evidence sufficiently demonstrates that Defendants were not on notice that the case was removeable until November 2004, when they received the "other paper" described herein.

> [The preponderance of the evidence standard] does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages. On the other end of the spectrum, requiring the defendant to prove that the amount in controversy "may" meet the federal requirement would effectively force the plaintiff seeking remand to prove in rebuttal that only a relatively small amount of damages is legally possible.

*Tapscott*, 77 F.3d at 1357 (citations omitted). It is illogical that courts would, on the one hand, hold a defendant to a "probability" standard (or even a lesser standard) for ascertaining the amount in controversy when determining whether the time to remove has begun to run, but, on the other hand, force the Defendants to defend that removal by proving that a "preponderance of the evidence" supports the existence of the requisite amount in controversy. For example, if the *Chapman* rule is not applicable to this case, had Defendants removed the case on the basis of the complaint itself and merely asserted that there was a probability that the amount in controversy exceeded $75,000, this court could have remanded the case *sua sponte* pursuant to its obligation to scrutinize its subject-matter jurisdiction. *See, e.g., Elias v. American National Red Cross*, 271 F. Supp. 2d 1370 (N. D. Ala. 2003)(involving diversity of citizenship question). The *Chapman* rule is more consistent with this circuit's "preponderance of the evidence" standard applied to defendants after removal is effectuated.

Having determined that the thirty-day period of § 1446(b) did not begin to run in this case until service "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is removable," the court also finds that Euler's motion for summary judgment, which was filed approximately eight months after the complaint

was served, constitutes "other paper."[6]  Accordingly, the court finds that Defendants' notice of removal was timely filed within thirty days of service of an "other paper" from which it first could be ascertained that the case was removable.  Plaintiff's motion to remand is due to be denied.[7]

## II.     Motion to Transfer

Defendants argue that this case should be transferred, under 28 U.S.C. §1404(a), to the United States District Court for the Northern District of Georgia for the convenience of the parties and witnesses and in the interest of justice based on a forum selection clause in advertising orders which it claims are binding on Euler.  The court finds that transfer is appropriate in this case.  "District courts have broad discretion in deciding whether to transfer an action to a more convenient forum." *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 503 (M.D. Ala.1994).  The decision of whether a case should be transferred under § 1404(a) is "'an individualized case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622

---

[6] As noted earlier, in its motion for summary judgment, Euler asserts that it is due to recover damages in the amount of $16,664.63 for incorrectly billed charges, plus "lost gross revenue in excess of $623,000.00," resulting from the Defendants' failure to publish Plaintiff's directory advertising. (Motion for Summary Judgment at ¶ 12).

[7] Relying on *Cogdell v. Wyeth*, 366 F.3d 1245 (11th Cir. 2004), Plaintiff also argues that Defendants have waived their right to remove the case because they took "substantial offensive or defensive actions in state court" during the eight months prior to removal of this case.  The court is not persuaded by this argument given its adoption of the *Chapman* rule.  Plaintiff's counsel conceded at oral argument that Defendants could not waive that which they did not have.  Under *Chapman*, the thirty-day time period under § 1446(b) does not begin to run unless the initial pleading "affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court."  Accordingly, Defendants could not have waived the right to remove because the case was not removeable during the pendency of the action in state court until such time of Plaintiff's filing of "other paper" (which rendered the case removeable).

(1964)).

Title 28 U.S.C. § 1404(a) codifies (with some additions) the common law doctrine of *forum non conveniens*. *See* 5 CHARLES A. WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, *FEDERAL PRACTICE AND PROCEDURE*, § 1352 (1969). Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). The analysis under § 1404(a) is a two-part inquiry. *Folkes v. Haley*, 64 F. Supp. 2d 1152, 1154 (M.D. Ala. 1999) (relying on *Ricoh Corp.*, 487 U.S. at 29). As a threshold matter, the court must consider if the case "might have been brought" in the transferee court. 28 U.S.C. § 1404(a). Second, the court must ask whether the balance of factors under § 1404(a) weighs in favor of transferring this action to the transferee court. 28 U.S.C. § 1404(a).

In this case, there is no dispute that venue is proper in the Northern District of Georgia such that the case could have been brought in that court.[8] Accordingly, the court must "decide whether the balance of convenience favors transfer." *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 504 (M.D.Ala.1994). The analysis under §1404(a) requires a balancing of practical considerations, which centers on convenience of the parties and witnesses, with the interest of justice, which focuses on fairness and efficiency. Although, in this Circuit, a plaintiff's choice of forum typically is entitled to considerable deference, *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989), that

---

[8] Although Plaintiff claims that venue is proper in the Northern District of Alabama, Plaintiff does not dispute that venue is also proper in the Northern District of Georgia. Both Defendants are incorporated in the State of Georgia and BAPCO has its principal place of business in Atlanta, Georgia, which is within the geographical territory of the Northern District of Georgia. Accordingly, under 28 U.S.C. §1391(a) and (c), venue is proper as to both Defendants in the Northern District of Georgia.

deference is lessened in this case because of the existence of a forum selection clause.

Plaintiff's brief admits that Plaintiff signed three Directory Advertising Orders regarding the advertising at issue in this case, at least one of which contained a forum selection clause. Evidence submitted by Defendants shows that the first Advertising Order was dated May 5, 2001 and signed by Donald W. Hayes, Jr., President of Euler. Above the signature lines, the Order states, "By signing this Order, or receipt of a copy without cancellation as set forth on the reverse, Applicant acknowledges having read, understood and agreed to the Terms and Condition on the reverse."[9] The following language appeared on the back of the Advertising Order:

> This DAO, if accepted by us, and any associated Printing Order, Detailed Confirmation, Proof Copies and any Special Advertising agreements are our entire agreement with you and shall be governed by the laws of the State of Georgia. We will not be bound by and disclaim any warranty or right to rely upon any other agreement or representation, such as the location of your Advertising in association with a heading, the nature of other's advertising or changes which you may later request in your Advertising. Any litigation arising hereunder shall be filed in either the Federal District Court for the Northern District of Georgia or the Superior Court of DeKalb County, Georgia, and you agree to consent to the jurisdiction of such courts.

(Affidavit of Deborah Moore, Ex. A).[10]

---

[9] Euler represents, without reference to an affidavit or any other evidentiary submission that, on or about May 2, 2002, Euler entered into a second Advertising Order which was faxed to Euler "without anything on the reverse side of any page." (Doc. # 8, at 3). Euler's brief does not address the third Advertising Order. Euler has not submitted any evidence, affidavit or otherwise, challenging the Advertising Orders submitted by Defendants.

[10] Euler denies that it is bound by any forum selection clause because it claims that it was not told about the forum selection or choice of law provisions, did not bargain for the provisions, and such provisions were not discussed by Defendants with any representative of Euler during its dealings. Euler's assertions are not supported by affidavit or other evidentiary support. By contrast, Defendants have presented evidence to show that the Advertising Orders, signed by Euler and accepted by Defendants, contained the forum selection clause at issue. (Affidavit of Deborah Moore, Ex. A). Moreover, the May 5, 2001 Advertising Order was signed by Euler's President, who

The Eleventh Circuit has held that forum selection clauses should be weighed as a significant factor in § 1404(a) balancing: "Thus, while other factors might 'conceivably' militate against transfer ... the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." *In re Ricoh Corporation*, 870 F.2d 570, 573 (11th Cir. 1989); *see also P&S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (interpreting *Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22 (1988)).[11] As discussed below, the court finds that the other § 1404(a) factors do not outweigh the significance of the forum selection clause in this case.

Two broad categories of factors must be considered under the plain language of § 1404(a)– the convenience of parties and witnesses and the interest of justice. When considering the practical need to adjudicate in a forum convenient for the parties and witnesses, courts generally examine the location of principal material witnesses, "the relative ease of access to sources of proof," and the ability of the parties to bear the expense of changing the forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). In this case, both Defendants are incorporated in the State of Georgia, although both have offices in Birmingham, Alabama. Plaintiff has three

---

clearly had the authority to bind the company and the sophistication to read and understand the contract terms. *Locklear Dodge City, Inc. v. Kimbrell*, 703 So.2d 303, 306 (Ala. 1997)(holding that "a person who signs a contract is on notice of the terms therein and is bound thereby even if he or she fails to read the document"). Euler cannot escape the terms of the Advertising Orders simply because it failed to read the contract provisions.

[11] Euler admits that out-bound forum selection clauses are considered by federal courts to be enforceable for the purpose of weighing them as a factor under 28 U.S.C. §1404(a). The Supreme Court has held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Although Euler disagrees with the Eleventh Circuit's interpretation of the role of a forum selection clause in the balancing process, this court is bound to follow Eleventh Circuit law.

office locations in Alabama but does not do business outside the State of Alabama. Plaintiff also represents that all of its witnesses are in the Birmingham, Alabama, area, and Plaintiff believes that Defendants' representatives are located in Alabama as well. (Doc. # 8). Convenience, however, is not the only additional factor to be considered; the court must weigh "those public-interest factors of systematic integrity and fairness" to determine if transfer is in the interest of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). Given the existence of a valid forum selection clause made part of the agreement of the parties, the court finds that it is in the interest of justice to transfer the case to the Northern District of Georgia.

Finally, Euler claims that even if this court applies the forum selection clause in this case, its scope is limited to its breach of contract claim and does not control the forum for any claims grounded in tort. The court is not persuaded by Euler's limited view of the provision at issue. The forum selection provision contained in the parties' agreement governs "[a]ny litigation arising hereunder." (Affidavit of Deborah Moore, Ex. A). The Eleventh Circuit considered a similar provision, which covered "any case or controversy arising under or in connection with this Agreement," and found that the provision "included all causes of action arising directly or indirectly from the business relationship evidenced by the contract." *See Stewart Organization v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir. 1987). In that case, the court explained that this reading "promotes a more orderly and efficient disposition of the case in accordance with the parties' intent" and was consistent with the Supreme Court's directive "to encourage commercial reliance on forum selection clauses." 810 F.2d at 1070.

Euler has brought claims against Defendants for breach of contract, fraud, negligence, and tortious interference with business relations. That some of those claims relate to Defendants' alleged attempt to bind Euler to pay amounts which Euler asserts were not owed

under any contract does not render them independent of the forum selection clause. All of the alleged claims in this case relate directly to the undertaking – the provision of directory advertising and the billing, and payment, of the charges for directory advertising – that is the subject of the contract, and the court finds that all Plaintiff's claims are subject to the forum selection clause.

### III.  Conclusion

For the reasons outlined above, the court finds that Plaintiff's motion to remand is due to be denied and Defendants' motion to transfer is due to be granted. A separate transfer order will be entered.

**DONE** and **ORDERED** this ___3rd___ day of January, 2005.

                                                                                  _____
                                                                                  **R. DAVID PROCTOR**
                                                                                  UNITED STATES DISTRICT JUDGE